WALTER HUGH FERGUSON AND LAURA MAXINE FERGUSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ferguson v. Commissioner
Docket Nos. 8700-79 and 6204-80.
United States Tax Court
T.C. Memo 1982-251; 1982 Tax Ct. Memo LEXIS 495; 43 T.C.M. (CCH) 1317; T.C.M. (RIA) 82251; May 5, 1982. Walter Hugh Ferguson and Laura Maxine Ferguson, pro se. Cynthia J. Olson, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: These consolidated cases were assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, [1] and Rule 180, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the Special *497 Trial Judge's Opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income taxes for 1975 and 1976 in the amounts of $ 447.00 and $ 3,231.00, respectively and additions to tax under section 6653(a) for 1975 and 1976 in the amounts of $ 22.00 and $ 162.00, respectively. The issues for decision are: (1) whether certain income is taxable to petitioners or to a family trust; (2) whether petitioners are entitled to deduct the cost of the family trust; (3) whether petitioners are entitled to deduct a legal fee; and (4) whether petitioners are liable for additions to tax for 1975 and 1976 due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). FINDINGS OF FACT To the extent stipulated, *498 the facts are so found. Petitioners resided in Chula Vista, California, at the time their petitions in these cases were filed. Petitioners filed joint individual income tax returns for the taxable years 1975 and 1976. During 1975 and 1976, petitioner Walter Hugh Ferguson (Hugh) was employed as an insurance salesman. Petitioner Laura Maxine Ferguson was employed as a secretary. Hugh used the name W. Hugh Ferguson and Laura Maxine Ferguson used the name Maxine Ferguson (Maxine).Hugh received commission income for his services in selling insurance policies. On May 1, 1975, Hugh executed a Declaration of Trust for the W. Hugh Ferguson Equity Pure Trust (Trust). Petitioners used preprinted documents obtained from Educational Scientific Publishers (ESP) to create the Trust and take related actions. The declared purpose of the Trust was: to accept rights, title and interest in and to real and personal properties, whether tangible or intangible, conveyed by THE CREATOR HEREOF AND GRANTOR HERETO to be the corpus of THIS TRUST. Included therein is the exclusive use of his lifetime services and ALL of his EARNED REMUNERATION ACCRUING THEREFROM, from any current source whatsoever, *499 so that W. HUGH FERGUSON (Grantor-Creator's Name) can maximize his lifetime efforts through the utilization of his Constitutional Rights; for the protection of his family in the pursuit of his happiness through his desire to promote the general welfare, all of which W. HUGH FERGUSON (Grantor-Creator's Name) feels he will achieve because they are sustained by his RELIGIOUS BELIEFS. Hugh purported to convey all of his real and personal property to the trust,including petitioners' home. Hugh also purported to convey to the Trust "The Exclusive use of the life-time services of W. Hugh Ferguson and Maxine Ferguson and all the currently earned remuneration there from." In return petitioners received beneficial units in the Trust. The beneficial interests were divided into 100 units in certificate form. These were preprinted ESP forms. Ownership of a beneficial certificate did not give the holder any title or interest in, or right to manage, the Trust property. This was set forth in the certificates of beneficial interest which state that the benefits conveyed consisted solely of the "emoluments as distributed by the action of The Trustees and nothing more." The certificates were *500 transferable and in fact various transfers of the units were made. On May 1, 1975, when the Trust was created, a certificate of 100 units of beneficial interest in the Trust was issued to Hugh. On May 5, 1975, Hugh's certificate of 100 units was voided and each petitioner received a certificate of 50 units as was originally intended. On June 1, 1975, Hugh's certificate of 50 units was voided and one unit was issued to petitioners' daughter, one to one son, one to another son and a certificate for 47 units was issued to Hugh. Petitioners were the trustees of the Trust during the years in issue. Their daughter, Carol Ann Pagard, initially was a trustee but she resigned as trustee shortly after the creation of the Trust. Hereinafter, all references to trustees shall be to the petitioners as such. Both petitioners had the right to draw on the Trust's bank account. During the years in issue the mortgage payments on petitioners' personal residence were made from checks drawn on the bank account of the Trust. Both petitioners signed these checks. They also used the Trust to pay their own medical expenses and their utilities and other personal expenses. Petitioners used the *501 car and camper truck "leased" to the Trust. It is clear that petitioners at all times retained full control over the assets of the Trust, and as trustees of the Trust, were empowered to "do anything any individual may legally do" with those assets. After creation of the Trust, petitioners continued to utilize the property which had been transferred to the Trust, together with other property leased to the Trust, for their own benefit and in exactly the same manner as it would have been used had the Trust not been created. After creation of the Trust, Hugh reported his commission income on the Forms 1041 filed by the Trust. This income was omitted from the individual income tax returns filed by petitioners. In 1975, petitioners paid $ 1,750.00 to purchase the ESP documents used to create the Trust. In 1975, petitioners paid $ 200.00 to an attorney to take care of the affairs of Maxine's mother who was in a convalescent home. On their 1975 Federal income tax return petitioners claimed deductions of $ 1,750.00 and $ 200.00 for the cost of the Trust and legal fees, respectively. Petitioners leased their car and camper truck to the Trust. On their 1975 return they claimed *502 $ 367.00 for depreciation and reported $ 193.00 as net income from rents. In 1975, petitioners reported income from consulting fees and net automobile leasing fees received from the Trust in the sum of $ 5,014.00. In 1976, they reported $ 4,850.00 as income from the Trust and $ 3,407.00 as consulting fee income from the Trust. For 1975, respondent determined that $ 8,373.00 of employment income and $ 3.00 of interest income earned by petitioners was not reported by them since it was improperly reported by the Trust. Respondent disallowed $ 1,950.00 in deductions which includes the $ 1,750.00 cost of the Trust and the $ 200.00 legal fee paid by petitioners. The rental expense deduction of $ 367.00 for depreciation was disallowed. Respondent determined that petitioners were entitled to certain itemized deductions erroneously claimed by the Trust. Respondent determined that the consulting fees of $ 4,821.00 and the gross rental income of $ 560.00 from the Trust was a return of capital and reduced petitioners' gross income accordingly. Respondent also determined self-employment tax of $ 57.00 and imposed a $ 22.00 addition to tax under section 6653(a). For 1976, respondent *503 increased petitioners' income by $ 18,757.00 claimed as paid to the Trust and decreased their income by the $ 4,850.00 reported as income from the Trust. Respondent also allowed petitioners the benefit of the standard deduction and an increased personal exemption credit. Respondent determined that self-employment tax of $ 544.00 was due. Respondent also determined that a $ 162.00 addition to tax should be imposed under section 6653(a). On brief, respondent conceded that the $ 3,407.00 reported as consulting fee income in 1976 was also a return of capital if respondent's position that the Trust was not effective to shift income earned by petitioners from them to the Trust is sustained by this Court. OPINION We are faced with yet another ESP family trust. As we previously stated, the ABC's to be derived from our holdings in the cases cited below are that the arrangements reflected in ESP trusts do not shelter a taxpayer from taxation.[3] For all the reasons set forth below, we again find that respondent's determinations must be sustained. *504 Hugh admits that if his wife, Maxine, is not an adverse party, "we haven't got a leg to stand on" under the grantor trust rules of sections 671 through 677. In Vercio v. Commissioner,73 T.C. 1246, 1256-1259 (1980), this Court carefully explained why a spouse is not an adverse party within the meaning of section 672.By an amendment of section 677 in 1969, Congress effectively ruled out the possibility that a spouse could be treated as anadverse party when a trust provision allows trust income to be used for said spouse's benefit. It is readily apparent that the income of the Trust could be used for Maxine's benefit and in fact was used for the benefit of both petitioners. Accordingly, on this record, we find that Maxine is not an adverse party. Sections 672 and 674, 677; Vercio v. Commissioner,supra.[4] Thus the grantor trust provisions of sections 671 through 677 require the income to be taxed to petitioners. *505 Petitioners themselves disregarded the Trust by paying themselves consulting fees even though they ostensibly had transferred their lifetime services to the Trust.This plus our review of the record compels us to conclude that the Trust lacked economic substance and was a nullity for Federal income tax purposes for the reasons set forth in Markosian v. Commissioner,73 T.C. 1235 (1980). There is still another ground for sustaining respondent. It is an elementary principle that income is taxable to the one who earns it and taxation of that income cannot be escaped by anticipatory arrangments assigning it to someone else. Lucas v. Earl,281 U.S. 111 (1930). This principle has been applied to taxpayers in an everlengthening list of so-called family trust cases similar to the present one. See, e.g., Vnuk v. Commissioner,T.C. Memo. 1979-164, affd. 621 F.2d 1318 (8th Cir. 1980); Vercio v. Commissioner,supra;Markosian v. Commissioner,supra;Wesenberg v. Commissioner,69 T.C. 1005 (1978); *506 Horvat v. Commissioner,T.C. Memo. 1977-104, affd. without opinion 582 F.2d 1282 (7th Cir. 1978). This case must be added to that list because Hugh's commissions are taxable to him. The $ 1,750.00 paid for the Trust package is similar to the amount paid to ESP by the taxpayers in Contini v. Commissioner,76 T.C. 447(1981), which we held to be a nondeductible personal expense. [5] The same determination in Gran v. Commissioner,T.C. Memo. 1980-558, was affirmed per curiam by the Eighth Circuit in 664 F.2d 199 ( Nov. 23, 1981, 48 AFTR 2d 81-6179, 81-2 USTC par. 9796). We also hold that petitioners' payment of $ 1,750.00 was a nondeductible personal expense under section 262. We find it commendable *507 that petitioners paid $ 200.00 to an attorney to assist Maxine's mother who was in a convalescent home. Nevertheless, this is a personal nondeductible expense under section 262. Respondent determined that petitioners negligently or intentionally disregarded the rules and regulations resulting in their liability for the additions to tax under section 6653(a). We agree. Petitioners ae obviously very intelligent individuals possessed of the ability to comprehend the significance of their actions. The record indicates that petitioners were fully aware of the tax avoidance nature of their scheme.The five percent addition to tax under section 6653(a) for negligence or intentional disregard of rules and regulations in the family trust cases in situations similar to the one before us has been consistently upheld by this Court. Wesenberg v. Commissioner,supra.[6]
*508 Petitioners disregarded the purported assignments of lifetime services by reporting the consulting fees on their own individual income tax returns. Had they truly assigned all their services to the Trust, it would have been ridiculous to have the Trust pay consulting fees to petitioners because the fees would have had to have been immediately returned by them to the Trust. We find it difficult to believe that they could have envisioned the Trust as anything other than a "flagrant tax avoidance scheme." Wesenberg v. Commissioner,supra at 1015. Petitioners have failed to carry their burden of proof that respondent was in error. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. For the reasons set forth, we sustain respondent's determination as to the additions to tax under section 6653(a) for both 1975 and 1976. Petitioners made no arguments with respect to the other adjustments made by respondent.Consequently, based on our holdings all of respondent's determinations are sustained. Accordingly, respondent's *509 concession on brief with respect to the $ 3,407.00 consulting fee will be given effect in a Rule 155 computation for the year 1976.
Decision will be entered for the respondent in docket no. 8700-79.
Decision will be entered under Rule 155 in docket no. 6204-80.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. See Antonelli v. Commissioner,T.C. Memo. 1980-544; Basham v. Commissioner,T.C. Memo. 1980-545 and Corcoran v. Commissioner,T.C. Memo. 1980-546↩.
4. See Broncatti v. Commissioner,T.C. Memo. 1981-452 and Antonelli v. Commissioner,supra.↩
5. See also, Shuman Equity Trust v. Commissioner,T.C. Memo. 1981-264; Raemer v. Commissioner,T.C. Memo. 1981-138; Sundheim v. Commissioner,T.C. Memo. 1981-139; Corcoran v. Commissioner, supra; Morgan v. Commissioner,T.C. Memo. 1978-401; Johnston v. Commissioner,T.C. Memo. 1978-121↩.
6. See Broncatti v. Commissioner,supra;Corcoran v. Commissioner,supra;Basham v. Commissioner,supra and Antonelli v. Commissioner.supra.↩